UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**04 10459 MLW**

NAS SURETY GROUP,
    Plaintiff,

v.

TINKER ELECTRICAL CORPORATION
and WILLIAM F. TINKER,
    Defendants.

MAGISTRATE JUDGE Collings

Civil Action No.

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED YES
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK ___
DATE 3/5/04

## COMPLAINT

The Plaintiff, NAS Surety Group ("NAS" or "Surety"), states and alleges for a cause of action against the Defendants as follows:

### PARTIES

1. The Plaintiff, NAS is an Illinois corporation authorized to do business and issue surety bonds in Massachusetts, among others, with a principal place of business at 300 Park Boulevard, Suite 500, Itasca, Illinois.

2. The Defendant Tinker Electrical Corporation, upon information and belief, is a is a Massachusetts corporation with a principal place of business at 256 Rear Trapelo Road, Belmont, Massachusetts.

3. The Defendant William F. Tinker, upon information and belief, resides at 39 Davis Road in Belmont, Massachusetts.

### JURISDICTION

4. Jurisdiction is founded on diversity of citizenship and amount in controversy. The matter in controversy exceeds, exclusive of interest, the sum of $75,000.00.

## BACKGROUND

5. At all times relevant to this action, NAS has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.

6. Tinker Electrical Corporation is an electrical contracting company.

7. On or about February 28, 2001, Tinker Electrical Corporation and William F. Tinker (hereinafter collectively referred to as "Defendants" or "Indemnitors") executed an agreement of indemnity (the "Indemnity Agreement"). A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit A and incorporated herein by reference.

8. The Indemnity Agreement provides that the Indemnitors "will exonerate, hold harmless, and indemnify the Surety from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure a release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as foresaid."

9. As a direct and proximate result of the Indemnitors executing the Indemnity Agreement, and in reliance thereon, NAS, as surety, executed a payment and performance bond (Bond No. 188758) (the "Bond") at the request and on behalf of Tinker, as

principal, to secure the performance of Tinker on the project known as the Thomas Carroll Elementary School (the "Project").

10. As a direct and proximate result of the Indemnitors executing the Indemnity Agreement, and in reliance thereon, NAS, as surety, executed a payment and performance bond (Bond No. 186274) (the "Bond") at the request and on behalf of Tinker, as principal, to secure the performance of Tinker on the project known as the Wayland Public Safety Building (the "Project").

11. As a direct and proximate result of the Indemnitors executing the Indemnity Agreement, and in reliance thereon, NAS, as surety, executed a payment and performance bond (Bond No. 186272) (the "Bond") at the request and on behalf of Tinker, as principal, to secure the performance of Tinker on the project known as the Pierce Elementary School (the "Project").

12. The above Projects listed in paragraph numbers 10, 11, and 12 the contracts were terminated as a direct and proximate result of the foregoing. NAS has taken over and completed the above Projects and has paid payment bond claims from various suppliers and/or subcontractors on the various projects.

13. As a direct and proximate result of the foregoing claims on the bond, NAS sustained losses in excess of $570,000 in performing its obligation under the bond and may sustain future losses in the form of consultant fees, attorneys' fees and other expenses.

## COUNT I - INDEMNITY

14. NAS repeats and incorporates by reference the allegations contained in paragraphs 1 through 13 as if set forth at length here.

15. As a direct result of NAS's execution of the Bond on behalf of its principal, Tinker, and at the request of the Defendants, and based on performance and payment bond claims related thereto, NAS is sustaining losses in the investigation, defense, and payment of same, and anticipates sustaining further losses in prosecuting this action.

16. Pursuant to the express terms of the Indemnity Agreement, the Defendants are required to hold NAS harmless from all losses, costs and expenses incurred in connection with the claims on the Bond.

17. As a result, the Defendants are liable, as Indemnitors, to NAS for all losses, costs, and expenses incurred in relation to any claims on bonds National Grange issued on behalf of GBC.

## COUNT II - BREACH OF CONTRACT

18. NAS repeats and incorporates by reference the allegations contained in paragraphs 1 through 17 as if set forth at length here.

19. The Indemnity Agreement, executed by the Defendants, provides that "[p]ayment shall be made to Surety ... as soon as liability exists or is asserted against Surety, whether or not Surety shall have made any payment thereof." The Indemnity Agreement further provides that such payment shall be either equal to the amount of any reserve set by Surety, or equal to such amount as Surety, in its sole judgment, shall deem sufficient to protect it from loss.

4

20. The Defendants' failure to indemnify NAS in accordance with the terms of the Indemnity Agreement constitutes a breach of the Indemnity Agreement for which the Defendants are liable.

### COUNT III - SPECIFIC PERFORMANCE

21. NAS repeats and incorporates by reference the allegations contained in paragraphs 1 through 20 as if set forth at length here.

22. Pursuant to NAS's common law rights, as well as its rights set forth in the Indemnity Agreement, the Defendants are required to collateralize and hold NAS harmless from any and all loss, costs or expenses, including attorneys' fees and interest.

23. The Defendants have failed to indemnify NAS for its losses, costs, expenses and attorneys' fees.

### COUNT IV- QUIA TIMET/EXONERATION

24. NAS repeats and incorporates by reference the allegations contained in paragraphs 1 through 23 as if set forth at length here.

25. By reason of the claims filed against the Bond issued by NAS, may be compelled to pay and satisfy the demands of the various Bond claimants.

26. NAS, as surety, possesses the equitable rights of Quia Timet/Exoneration to demand that the Defendants adequately secure and collateralize NAS prior to any payment by NAS.

27. NAS's loss of its equitable right of Quia Timet or Exoneration constitutes an irreparable harm for which there is no adequate legal remedy.

## PRAYER FOR RELIEF

WHEREFORE, NAS Surety Group, as surety, requests that this Court enter a Judgment against the Defendants, jointly and severally; (1) requiring the Defendants to immediately reimburse NAS for all incurred losses, plus interest, costs, attorneys' fees and any other incurred expense; (2) to provide collateral to NAS in an amount necessary to properly protect it against any and all claims filed against the bond; and (3) all other relief to which NAS is entitled.

                                       Respectfully Submitted,
                                       Plaintiff NAS Surety Group,
                                       By its attorneys,

                                       /s/ Bradford R. Carver
                                       Bradford R. Carver, BBO #565396
                                       Paula-Lee Chambers, BBO# 566888
                                       CETRULO & CAPONE, LLP
                                       Two Seaport Lane
                                       Boston, MA 02210
                                       (617) 217-5500    Fax: (617) 217-5200

Dated: March 4, 2004
319985v1

# EXHIBIT A

# NAS SURETY GROUP
300 PARK BOULEVARD, SUITE 500
ITASCA, IL 60143-2625

## GENERAL INDEMNITY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, hereinafter called Indemnitors, have requested and do hereby request *NORTH AMERICAN SPECIALTY INSURANCE COMPANY, and/or WASHINGTON INTERNATIONAL INSURANCE COMPANY, and/or NORTH AMERICAN CAPACITY INSURANCE COMPANY, and/or any and all existing and/or future affiliates, subsidiaries, divisions, successors, assigns, co-sureties, and/or reinsurers of said entities,* hereinafter referred to as Surety, to execute or procure the execution of such bonds, undertakings or recognizances (all of which are hereinafter included within the term "bond or bonds") as have been and as may hereafter be applied for directly or through an agent, attorney or other representative, solely or as co-adventurer with others, by any of the Indemnitors, or by any person, firm, corporation or association whose name shall, for that purpose, have been furnished to the Surety by any of the Indemnitors, it being understood and agreed that this instrument shall cover all bonds so applied for and executed, whether or not this instrument is referred to or mentioned in connection therewith;

NOW, THEREFORE, in consideration of the premises and of the execution or continuance of such bonds, the Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally, covenant and agree with the Surety, its successors and assigns, as follows:

1. The Indemnitors will pay, when due, all premiums for each of such bonds in accordance with the Surety's regular manual rates in effect on the date such bond becomes effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the bonds, or of all liability by reason thereof.

2. The Indemnitors will exonerate, hold harmless, and indemnify the Surety from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure a release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

3. If the Surety receives any claim or lawsuit asserting liability, or sets up a reserve to cover any liability, claim asserted, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, and whether or not the Surety shall have made any payment therefor, deposit with the Surety a sum of money equal to such claim or reserve and any increase thereof as collateral security on such bond, and such sum and any other money or property which shall have been or shall hereafter be pledged as collateral security on any such bond, shall be available, in the discretion of the Surety, as collateral security on all bonds coming within the scope of this instrument, or for any other indebtedness of the Indemnitors to the Surety; and any such collateral security shall be held subject to the terms of the Surety's regular form of receipt for collateral, which is by reference made a part hereof.

4. If any such bond be given in connection with a contract, the Surety in its sole discretion is hereby authorized, but not required, (a) to consent to any change in the contract or in the plans and specifications relating thereto; (b) to make or guarantee advances or loans for the purposes of the contract without any obligation to see to the application thereof, it being understood that the amount of all such advances or loans shall be conclusively presumed to be a loss hereunder for which the Indemnitors are liable; (c) in the event of any breach or default in the performance of the contract, or the breach of this Agreement or of any bond connected therewith, or the failure to diligently prosecute the work under any contract, or to pay for labor and materials used in the prosecution of the contract, or in the event of the death, disappearance, conviction of a felony, imprisonment, incompetency, insolvency, or bankruptcy of any Indemnitor, or the appointment of a receiver or trustee for any Indemnitor, or the property of any Indemnitor, or in the event of an assignment for the benefit of creditors of any Indemnitor, or if any action is taken by or against any Indemnitor under or by virtue of any Bankruptcy Act or Code, or should reorganization or arrangement proceedings be filed by or against any Indemnitor under said Act or Code, or if any action is taken by or against any Indemnitor under the insolvency laws of any state, possession, or territory of the United States, or in the event work has ceased or been suspended on any contract or contracts covered by any said bonds, to take possession of the work under the contract, and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate. In the event that the Surety takes possession of the work as above provided, the Indemnitors hereby release and discharge the Surety, in this connection, from all liability for all its actions and omissions except for deliberate malfeasance.

5. The Indemnitors hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond, but only in the event of default, breach or failure as referred to in preceding Section 4(c)), as collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts referred to in such bonds, including their right, title and interest in and to (a) all subcontracts let in connection therewith and such subcontractors' surety bonds, (b) all machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work, or elsewhere, for the purposes of all of the Indemnitors' contracts, whether bonded or unbonded, including all materials ordered for the contracts, and (c) any and all sums due or which may thereafter become due under such contracts, and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest.

6. The Surety may, at its option, file or record this Agreement, or any other document executed by any or all of the Indemnitors, individually or jointly, in connection with the application, issuance or execution of any bond or bonds, as a security agreement, as part of a financing statement or as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of the Surety, and that the failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement.

7. If any of the bonds are executed in connection with a contract which by its terms or by law prohibits assignment of contract proceeds, or any part thereof, the Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due or to become due under any contract or contracts covered by the bonds are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for the payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of

said bonds, which said trust also in... the benefit of the Surety for any liability it may have or sustain under any of said bonds, and this Agreement and decl... ...on shall also constitute notice of such trust.

8. The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors, or any one of them, on any such bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith, shall be final and binding upon the Indemnitors. The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to the Surety for any and all loss, costs, damages, interest, and expenses, including but not limited to attorneys' fees and consultants' fees resulting from the Surety's investigation and/or defense. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such payments, with interest.

9. The Indemnitors hereby authorize the Surety in its sole discretion to do the following: (a) from time to time make or consent to any change in, or issue any substitute for or renewal of, any such bond, or in any contract referred to in any such bond, and this instrument shall apply to such substituted or changed bond or renewal; (b) if any such bond be given in an action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of the execution of such bond as the authorized representative of such party until the Surety shall have been fully discharged from liability under such bond; (c) take such steps as the Surety may deem necessary or proper to obtain a release from liability from any such bond.

10. The Indemnitors hereby waive notice of the execution of any such bonds and of the acceptance of this Agreement, and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said bonds, as well as notice of any and all liability of the Surety, or of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liabilities under any such bond, or rights or liabilities of the Indemnitors hereunder, notice of all such being hereby expressly waived.

11. If the Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such bonds, this instrument shall inure to the benefit of such other company or companies, its or their successors and assigns so as to give to it or them a direct right of action against the Indemnitors to enforce this instrument and, in that event, the word "Surety", wherever used herein, shall be deemed to include such company or companies, as their respective interests may appear.

12. The liability of the Indemnitors hereunder shall not be affected by the failure of any party to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity or Indemnitor, nor by the return or exchange of any collateral that may have been obtained; and if any party signing this instrument is not bound for any reason, this obligation shall still be binding upon each and every other party.

13. Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any or all of the Indemnitors; and suit or suits upon one or more causes of action, or against one or more of the Indemnitors, shall not prejudice or bar subsequent suits against any other or all of the Indemnitors on the same or any other cause or causes of action, whether theretofore or thereafter accruing. If any claim or demand is made by the Surety against one or more of the Indemnitors, the Surety is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement shall not affect the liability of any of the others, and the Indemnitors expressly waive their claim to be discharged and released by reason of the release of one or more of the joint debtors, and the Indemnitors hereby consent to any settlement that may hereafter be made.

14. The Indemnitors waive any defense that this instrument was executed subsequent to the date of any such bond, admitting and covenanting that such bond was executed pursuant to the Indemnitors' request, and in reliance on the Indemnitors' promise, to execute this instrument. In the event any part or clause of this Indemnity Agreement shall be void under the law of the place governing the construction hereof, then such part or clause only shall be considered as deleted and the remainder of this Agreement shall be construed according to its true intent and shall endure in full force and effect.

15. The Surety, at its option, may decline to execute, participate in or procure the execution of any such bond and the Indemnitors agree to make no claim to the contrary; and if the Surety shall execute a bid or proposal bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the bid or proposal bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the bid or proposal bond.

16. At any time, and until such time as the liability of the Surety under any and all such bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors; and any bank depository, materialman, supply house, or other person, firm or corporation, when requested by the Surety, is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by an Indemnitor, the condition of the performance of such contracts, and payments of accounts.

17. Wherever used in this instrument, the plural term shall include the singular and the singular shall include the plural, as the circumstances require. The words Indemnitor and Indemnitors, or the personal pronouns used to refer to said words, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

18. The Indemnitors hereby agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Surety is construed toward its obligee or other claimants.

19. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their Attorney in Fact, with the right, but not the obligation, to exercise all of the rights of Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Indemnitors, or any of them, to make, execute and deliver any and all additional or other assignments, documents or papers, including but not limited to the execution of instruments referred to in Section 5, and the endorsement of checks or other instruments representing payment of contract monies, deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such Attorney in Fact.

20. The Indemnitors hereby waive and abandon, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession.

21. The obligation of the Indemnitors hereunder shall be continuous; provided, however, that any of the Indemnitors may give the Surety not less than thirty days written notice by registered mail of the Indemnitor's desire to terminate this Agreement, but any such notice of termination shall not operate to modify, bar, discharge, limit, affect or impair the Indemnitor's liability hereunder on or by reason of any such bond executed prior to the termination of such thirty days. Further, such notice of termination shall not operate to modify, bar, discharge, limit, affect or impair the Indemnitor's liability hereunder upon the award of a contract to any of the Indemnitors on a bid or proposal with respect to which the Surety has executed a bid or proposal bond, or similar undertaking, or has otherwise become obligated to execute a bond or undertaking prior to the termination of such thirty days. Such notice of termination shall operate only with respect to those Indemnitors identified in such notice as requesting termination of this Agreement. Such notice shall not be deemed to have been given until received by the Surety at its home office.

22. This Agreement may not be changed or modified orally. No change or modification shall be effective unless specifically agreed in writing.

23. The Surety, in its sole discretion, is authorized and empowered to guarantee loans, to advance or lend the Indemnitors money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by, the bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Indemnitors, or guaranteed by the Surety for the purposes of any such contracts, and all costs and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Indemnitors to the Surety when due, shall be presumed to be a loss by the Surety for which the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Indemnitors.

24. It is understood and agreed by the Indemnitors that the rights, powers and remedies given the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any particular right, power, or remedy, at any time, shall not be considered an election of remedy, or a waiver of any other right, power, or remedy. The rights, powers and remedies given the Surety under this Agreement are in addition to, and not in lieu of, any and all other rights, powers and remedies which the Surety may have or acquire against the Indemnitors or others, whether by the terms of any other agreement, by operation of law or otherwise.

25. _____

IN TESTIMONY WHEREOF, the Indemnitors, intending to be legally bound hereby, have hereunto set their hands and affixed their seals this __28th__ day of __February__, 20 _01_.

## CORPORATION OR COMPANY INDEMNITORS

Witness

By /s/ _____

Tinker Electrical Corporation
(Name of Corporation or Company Indemnitor)

by /s/ _____ (SEAL)
    President                    (Title)
Address 256R Trapello Road, Belmont, MA 02478
TID # 04-3528559

Witness

By _____

_____
(Name of Corporation or Company Indemnitor)

by _____
                              (Title)
Address _____
TID # _____

Witness

By _____

_____
(Name of Corporation or Company Indemnitor)

by _____
                              (Title)
Address _____
TID # _____

## INDIVIDUAL INDEMNITORS

Witness By _[signature]_

William F. Tinker
(Name of Individual Indemnitor)
_[signature]_ William F. Tinker
(signature)
Address 39 Davis Road, Belmont, MA 02478
SS # 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

Witness By _____

(Name of Individual Indemnitor) _____
(signature) _____
Address _____
SS # _____

Witness By _____

(Name of Individual Indemnitor) _____
(signature) _____
Address _____
SS # _____

Witness By _____

(Name of Individual Indemnitor) _____
(signature) _____
Address _____
SS # _____

Witness By _____

(Name of Individual Indemnitor) _____
(signature) _____
Address _____
SS # _____

Witness By _____

(Name of Individual Indemnitor) _____
(signature) _____
Address _____
SS # _____

## PARTNERSHIP INDEMNITORS

Witness

By_____

_____
(Name of Partnership Indemnitor)

by_____
                                    (Title)

Address_____
TID #_____

Witness

By_____

_____
(Name of Partnership Indemnitor)

by_____
                                    (Title)

Address_____
TID #_____

## CORPORATE OR COMPANY ACKNOWLEDGMENT(S)

STATE OF __Massachusetts__
COUNTY OF __Middlesex__
✓ On this __28__ day of __February__ 20 __01__, before me personally came __William F. Tinker__ to me known and who, being duly sworn, did depose and say that (s)he resides in __Belmont, MA__; that (s)he is the __President__ of the (circle appropriate type of entity) *corporation*, ~~limited liability corporation~~, ~~or proprietorship~~ which executed the foregoing instrument; that (s)he is the duly authorized representative of said entity, and that (s)he has the full power and authority to bind said entity to the foregoing instrument.

_____William F. Tinker_____
NOTARY PUBLIC
                        Seal

STATE OF __Mass__
COUNTY OF __Middlesex__
On this __28th__ day of __February__ 20 __01__, before me personally came __William F. Tinker__ to me known and who, being duly sworn, did depose and say that (s)he resides in __Belmont, MA__; that (s)he is the __President__ of the (circle appropriate type of entity) *corporation, limited liability corporation, or proprietorship* which executed the foregoing instrument; that (s)he is the duly authorized representative of said entity, and that (s)he has the full power and authority to bind said entity to the foregoing instrument.

_____Carol Lee Penta_____
NOTARY PUBLIC

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20 ____, before me personally came _____ to me known and who, being duly sworn, did depose and say that (s)he resides in _____; that (s)he is the _____ of the (circle appropriate type of entity) *corporation, limited liability corporation, or proprietorship* which executed the foregoing instrument; that (s)he is the duly authorized representative of said entity, and that (s)he has the full power and authority to bind said entity to the foregoing instrument.

_____
NOTARY PUBLIC

INDIVIDUAL ACKNOWLEDGMENT(S)

STATE OF ____Massachusetts____
COUNTY OF ____Middlesex____
On this __28th__ day of __February__ 20 _01_, before me personally came ____William F. Tinker____ to me known to be the *individual* who executed the foregoing instrument, and acknowledged that (s)he executed same.

_____William F. Tinker_____ (SEAL)
NOTARY PUBLIC

STATE OF __Mass__
COUNTY OF __Middlesex__
On this __28th__ day of __February__ 20 _01_, before me personally came ____William F. Tinker____ to me known to be the *individual* who executed the foregoing instrument, and acknowledged that (s)he executed same.

_____Carol Penta_____
NOTARY PUBLIC

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20 ____, before me personally came _____ to me known to be the *individual* who executed the foregoing instrument, and acknowledged that (s)he executed same.

_____
NOTARY PUBLIC

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20 ____, before me personally came _____ to me known to be the *individual* who executed the foregoing instrument, and acknowledged that (s)he executed same.

_____
NOTARY PUBLIC

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20 ____, before me personally came _____ to me known to be the *individual* who executed the foregoing instrument, and acknowledged that (s)he executed same.

_____
NOTARY PUBLIC

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20 ____, before me personally came _____ to me known to be the *individual* who executed the foregoing instrument, and acknowledged that (s)he executed same.

_____
NOTARY PUBLIC

PARTNERSHIP ACKNOWLEDGMENT(S)

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20____ , before me personally came _____ to me known and stated that ____ he ____ is (are) *partner(s)* in the firm of _____ and acknowledged that ____ he ____ executed the foregoing instrument as the act of said firm.

_____
NOTARY PUBLIC

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20____ , before me personally came _____ to me known and stated that ____ he ____ is (are) *partner(s)* in the firm of _____ and acknowledged that ____ he ____ executed the foregoing instrument as the act of said firm.

_____
NOTARY PUBLIC